UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ÁNGEL GARCÍA-ÁLVAREZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 09-1067 (JAF)

(Crim. No. 06-198)

**OPINION AND ORDER**

Petitioner, Ángel García-Álvarez, brings this pro-se petition under 28 U.S.C. § 2255 for relief from sentencing by a federal court, alleging that the sentence was imposed in violation of his rights under federal law, and requests an evidentiary hearing.  (Docket Nos. 1; 2.) Respondent opposes (Docket No. 8), and Petitioner replies (Docket No. 10).  Petitioner also moves for appointment of counsel. (Docket Nos. 11; 16; 17.)

**I.**

**Factual and Procedural History**

We derive the following summary from the trial record (Crim. No. 06-198, Docket Nos. 66–69) unless otherwise noted.  On June 21, 2006, Petitioner was indicted on charges of carjacking, 18 U.S.C. § 2119, and the use, or possession of, a firearm in a crime of violence, 18 U.S.C. § 924(c).  (Crim. No. 06-198, Docket No. 10.)   The charges arose from an armed robbery, home invasion, and carjacking perpetrated against Federico López-Villafañe on the morning of April 12, 2006, at his apartment building in the Condado neighborhood of San Juan. At around 9:30 that morning, López-Villafañe's condominium maintenance worker, William

Ramírez-Restes, was ambushed and assaulted by several people as he entered the basement of the building. The assailants blindfolded and interrogated Ramírez-Restes, leaving him tied up in the basement. At about 10:38 a.m., four individuals assaulted López-Villafañe as he was leaving his apartment, forcing him to the basement, where he was bound and blindfolded with tape. The assailants, in possession of López-Villafañe's keys, stole various valuables from his apartment—assaulting López-Villafañe's maid, Clemencia Lewis, in the process—before stealing his car. López-Villafañe eventually freed himself and called police.

Petitioner's trial began on August 14, 2006. The Government's case relied on lineup and photo-array identifications made by López-Villafañe and Lewis. Petitioner raised an alibi defense, claiming that he was delivering furniture in Carolina—a city adjacent to San Juan—at the same time the crime was taking place in Condado. In order to establish this alibi, Petitioner presented the testimony of Juan Espaillat-Díaz, an employee of Petitioner's furniture delivery business, and of José Rivera and Olga Carrasquillo-Marques, the homeowners to whom Petitioner delivered furniture shortly after 11 a.m. on April 12, 2006. Espaillat-Díaz testified that he met Petitioner at the American Furniture warehouse at 9 a.m. on April 12 and was given the delivery invoice for the day. Petitioner told him that he should load the delivery truck while Petitioner left to pay his cell phone bill. Espaillat-Díaz finished loading the truck at 10:30 and set out to make his first delivery to the home of Rivera and Carrasquillo-Marques. At 10:35, Espaillat-Díaz drove by American Furniture's storefront, a separate location from the warehouse, and recognized what he believed to be Petitioner's truck. He called Petitioner, who said that he would follow Espaillat-Díaz to the delivery in the Country Club neighborhood of Carolina. Espaillat-Díaz did not see Petitioner's truck follow him. At one point, he called

Civil No. 09-1067 (JAF)                                                                                                    -3-

Petitioner for help in finding the delivery location. Then, at around 11:00, he reached the delivery location and Petitioner arrived to meet him five minutes later. Petitioner and Espaillat-Díaz spent the next hour delivering and assembling the furniture for Rivera and Carrasquillo-Marques. Petitioner and Espaillat-Díaz completed the delivery at noon and parted ways.

The Government relied upon lineup and photo-array identifications made by López-Villafañe and Lewis, identifying Petitioner as one of their assailants. As for rebutting Petitioner's alibi, the Government presented the testimony of FBI Agent Eric Gonima Gil, who stated that the drive from the crime scene to the home of Rivera and Carrasquillo-Marques averaged ten minutes. Thus, the Government argued, Petitioner had ample time to drive from the crime scene in Condado to the furniture delivery in Carolina. The jury returned its verdict on August 18, 2006, convicting Petitioner of both counts in the indictment.

Petitioner moved for a new trial on February 13, 2007, on the basis of what he claimed to be newly-discovered evidence supporting his alibi. (Crim. No. 06-198, Docket No. 71.) Petitioner asserted that his cell-phone records from April 12, 2006, reveal that all eight calls originating from or received by his cell phone between 9:33 and 10:30 a.m.—spanning the approximate time in which the assaults on Ramírez-Restes and López-Villafañe began— were carried by cell towers in Carolina.[1] We denied Petitioner's motion, finding that Petitioner had failed the first two prongs of the analysis of a motion under Federal Rule of Criminal Procedure 33: the evidence (1) was not available or unknown at the time of trial; and (2) could have been discovered with due diligence. (Crim. No. 06-198, Docket No. 83.) The First Circuit affirmed

---

[1] A more detailed description of Petitioner's evidence can be found in our opinion denying that motion (Case No. 06-198, Docket No. 83).

Civil No. 09-1067 (JAF)                                                                                                                            -4-

Petitioner's conviction and our denial of his motion for new trial, noting that Petitioner could choose to utilize his counsel's failure to present the cell-phone records at trial as the basis of an ineffective-assistance-of-counsel claim under 28 U.S.C. § 2255.  United States v. García-Álvarez, 541 F.3d 8, 18 (1st Cir. 2008).

In the motion before us, Petitioner asserts four bases for relief under § 2255: (1) ineffective assistance of counsel, premised on various grounds, but the foremost being the failure to present Petitioner's cell-phone records as proof of alibi; (2) a jury instruction that impermissibly shifted the burden of proof from the Government to Petitioner; (3) insufficient evidence for conviction; and (4) admission of hearsay testimony in violation of Petitioner's Sixth Amendment right to confrontation as set forth in Crawford v. Washington, 541 U.S. 36 (2004).  (Docket No. 1-2.)

## II.

### Standard for Relief Under 28 U.S.C. § 2255

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court.  See 28 U.S.C. § 2255.  A federal prisoner may challenge his sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States."  Id.  The petitioner is entitled to an evidentiary hearing unless the "allegations, even if true, do not entitle him to relief, or . . . 'state conclusions instead of facts, contradict the record, or are inherently incredible.'"  Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993)); see 28 U.S.C. § 2255(b).  A petitioner cannot be granted relief on a claim that has not

been raised at trial or direct appeal, unless he can demonstrate both cause and actual prejudice for his procedural default. See United States v. Frady, 456 U.S. 152, 167 (1982).

### III.

### Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

**A.  Ineffective Assistance of Counsel**

Petitioner claims ineffective assistance of trial counsel, Assistant Federal Public Defender ("AFPD") Joannie Plaza, based on the following errors: (1) failure to request an evidentiary hearing at sentencing; (2) opening the door to evidence of prior bad acts; (3) failure to subpoena a witness; and (4) failure to investigate and introduce the Petitioner's cell-phone records in support of his alibi defense.

The success of an ineffective-assistance-of-counsel claim depends on Petitioner's showing not only a deficient performance by his trial counsel but also a resulting prejudice. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). Deficient performance is present where the trial counsel's representation "fell below an objective standard of reasonableness," a standard that is informed by "prevailing professional norms." Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). Choices made by counsel that could be considered part of trial strategy will almost never amount to deficient performance. See Strickland, 466 U.S. at 690; see also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (holding that performance is

deficient only where "counsel's choice was so patently unreasonable that no competent attorney would have made it"(internal quotations omitted)).  Counsel's decision not to pursue "futile tactics" will not be considered deficient performance. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999); see also Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (stating that failure to raise meritless claims is not ineffective assistance of counsel).  Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and said probability is less onerous than a "more likely than not" standard.  Id.

    **1.**    **Failure to Request an Evidentiary Hearing**

Petitioner argues that AFPD Plaza was ineffective in not requesting an evidentiary hearing to resolve sentencing factors in dispute.  The U.S. Sentencing Guidelines Manual § 6A1.3 provides that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." Petitioner claims that his cell-phone records and his presence at the robbery were both factors in dispute.  The cell-phone evidence was only discussed during the sentencing hearing as it related to a pending motion for a new trial, and it did not affect the calculation of his sentence. (See Crim. No. 06-198, Docket No. 87 at 1–7.)  Petitioner's presence at the robbery had already been affirmed by the jury when they convicted him of the charged conduct.  Since there were no disputed factors for which a hearing would have been necessary, Petitioner's representation was not defective.  Petitioner also suggests that AFPD Plaza was ineffective in not objecting to the presentence report. (Docket No. 1-2 at 10.)  AFPD

Plaza did, however, object to part of the presentence report. (Crim. No. 06-198, Docket No. 87 at 8.)

### 2. Opening the Door

Petitioner also claims that AFPD Plaza's representation fell below reasonable standards because her cross-examination of a witness "opened the door to bad acts" evidence under Federal Rule of Evidence 404(b). Petitioner points to a portion of the cross-examination of police officer Rivera-Alvarado, wherein AFPD Plaza questioned the witness as to the criminal records of Rubén and Sandry García, relatives of Petitioner and suspects in the criminal investigation. (Crim. No. 06-198, Docket No. 68 at 87–89.) AFPD Plaza in no way introduced evidence of prior crimes or bad acts of the Petitioner, the victim, or a witness and, thus, the door was never opened to the Government's introduction of prior crimes or bad acts of Petitioner. See Fed. R. Evid. 404(a)(1)–(3).

### 3. Failure to Subpoena

Next, Petitioner argues that AFPD Plaza failed to subpoena a key witness, police officer Jennifer Rivera-Villanueva. (Docket No. 1-2 at 16.) AFPD Plaza did, in fact, subpoena the witness on August 11, 2006. The trial transcript reveals that the police officer simply did not comply with the subpoena, having worked a late shift and taken "a lot of pills" for a migraine. (Docket No. 69 at 92.) AFPD Plaza explained, "[W]e have discussed the matter with the defendant, and we are going to proceed without the witness." (Id.) This was clearly a strategic choice, one to which Petitioner consented. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

### 4. Failure to Introduce Alibi Evidence

Petitioner's final ground for ineffective assistance of counsel is that AFPD Plaza failed to introduce his cell-phone records as alibi evidence. Petitioner claims that he specifically instructed Plaza to introduce his cell-phone records "to show his whereabouts during the time of the robbery" but that counsel ignored his request and did not even begin to research these records until two months following the jury verdict. (Docket No. 1-2 at 17.)

We first ask whether this was deficient performance. The Government has argued that AFPD Plaza's failure to investigate these records was a tactical decision made as part of her overall trial strategy—a decision which should be accorded considerable deference. (Docket No. 8 at 6–8.) The Supreme Court has held that such deference is owed to strategic choices "made after thorough investigation of law and facts" or after a reasonable professional judgment that "particular investigations [are] unnecessary." Strickland, 466 U.S. at 690–91. AFPD Plaza's motion for a new trial states that she obtained Petitioner's cell-phone records during pretrial investigation but did not introduce them at trial because "the potential relevancy that this information carried was not developed since [Petitioner's] alibi defense was to be presented through the testimonies of witnesses and other documentary evidence." (Crim. No. 06-198, Docket No. 71-1 at 8.) The motion goes on to state that AFPD Plaza did not anticipate the Government's theory that Petitioner took steps to manufacture his alibi. (Id.) AFPD Plaza's statements and work logs establish that she conducted no further investigation of the cell-phone records until several months after the jury's guilty verdict, at which point she enlisted the aid of engineers from Petitioner's cellular provider to decipher certain billing codes. (See Crim. No. 06-198, Docket Nos. 71-1; 71-12.)

As AFPD Plaza claims that she did not thoroughly investigate the cell-phone records before trial, we must ask whether this choice to limit her investigation and presentation of the alibi defense was the product of reasonable professional judgment or, rather, a choice no reasonably-competent attorney would make. In Pina v. Maloney, the choice to forgo presenting evidence of an alibi was held reasonable by the First Circuit where trial counsel chose instead to pursue a misidentification defense. 565 F.3d 48, 55–56 (1st Cir. 2009). Trial counsel in Pina knew that the defendant's fiancee was willing to testify that the defendant was at home with her during the time he was alleged to have participated in a murder in the streets. Id. Yet, the government was set to call two witnesses who were at the scene of the murder and would testify that defendant was the shooter. Id. at 51. In light of this testimony, counsel abandoned the alibi defense, which would have been based on the testimony of a "plainly interested witness," and instead chose to rely on misidentification. The First Circuit upheld this as a "reasonable, tactical decision." Id. at 56.

Similarly, AFPD Plaza was confronted in this case with eyewitness testimony of two victims identifying Petitioner as their assailant. Unlike the counsel in Pina, AFPD Plaza did not abandon the alibi defense completely. Instead, she presented both alibi and misidentification defense theories. Confident that she could establish the alibi with the testimony of Espaillat-Díaz and delivery recipients Rivera and Carrasquillo-Marques, AFPD Plaza made a reasonable assessment that further investigation of the cell-phone records was unnecessary. Furthermore, we must remember that the value of such evidence depends entirely upon tying the cell phone to Petitioner during the crime. The only evidence to support Petitioner's use of the phone at those times is the testimony of Espaillat-Díaz, Petitioner's employee and, thus, a witness who

had a financial interest in his continued employment by Petitioner. While AFPD Plaza's decision not to present this evidence may not, in retrospect, have been the best choice, we must avoid the "distorting effects of hindsight," Strickland, 466 U.S. at 689, while remembering that the Sixth Amendment "does not guarantee a defendant a letter-perfect defense or a successful defense," United States v. Natel, 938 F.2d 302, 309–10 (1st Cir. 1991). Given the totality of the circumstances presented to AFPD Plaza when preparing Petitioner's defense, which included credible identifications made by two victims, we find that the decision not to introduce the cell-phone evidence was an exercise of reasonable professional judgment.

Even assuming that AFPD Plaza's failure to research and present this evidence was deficient representation of her client, Petitioner's claim fails to meet the "prejudice" prong of Strickland analysis. Petitioner was positively identified in open court by both López-Villafañe and Lewis as one of their assailants. (See Crim. No. 06-198, Docket Nos. 66 at 74–75; 67 at 79.) In light of these identifications, we find no reasonable probability that the jury's verdict would have been different if Petitioner's cell-phone records, and their analysis by Centennial engineers, had been introduced at trial. While this evidence may have demonstrated that a cell phone registered to Petitioner was in Carolina during the commission of this crime, it does little to undermine confidence in the lineup, photo-array, and courtroom identifications by López-Villafañe and Lewis, witnesses who were cruelly assaulted. See Levasseur v. Pepe, 70 F.3d 187, 195 (1st Cir. 1995) (noting that an assault victim's degree of attention during a traumatic incident "is presumed to have been acute" and supports the credibility of her witness identification). The identification of Petitioner by his victims was critical in the jury's conviction. Furthermore, a cell phone does not always follow the owner. The phone could have

been in the hands of a third party while the Petitioner committed the crime. Considering the totality of the evidence before the jury, the inclusion of this new evidence would not have resulted in a reasonable probability of acquittal.

### B. Procedurally Defaulted Claims

Petitioner's three remaining claims of constitutional violations were neither preserved at trial nor raised on direct appeal. For such claims to survive, petitioners must demonstrate "cause and actual prejudice" of their procedural default. See United States v. Frady, 456 U.S. 152, 167 (1982) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)). Petitioner advances no cause for his default. We, therefore, cannot consider Petitioner's claims of faulty jury instructions, insufficient evidence, and admission of testimonial hearsay in violation of Crawford v. Washington, 541 U.S. 36 (2004).

## IV.

### Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). We see no way in which a reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong. Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

Civil No. 09-1067 (JAF)                                                                                              -12-

## V.

### Conclusion

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1), motion for an evidentiary hearing (Docket No. 2), and motions to appoint counsel (Docket Nos. 11; 16; 17). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief in this court. Petitioner's motion to strike the United States' response (Docket No. 10) is denied as moot.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 13th day of December, 2010.

                                                                           s/José Antonio Fusté
                                                                           JOSE ANTONIO FUSTE
                                                                           Chief U.S. District Judge